IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | Case No. 3:17-cr-00054-TMB |
|---|---|
| Plaintiff, | **ORDER ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 [DKT. 146] AND MOTION TO STAY 28 U.S.C. § 2255 MOTION OR VACATE THE CONVICTION AND ALLOW AN APPEAL TO PROCEED [DKT. 161]** |
| v. | |
| MATTHEW ADRIAN COLDING, | |
| Defendant. | |

## I. INTRODUCTION

The matter comes before the Court on Petitioner Matthew Adrian Colding's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (the "Motion to Vacate")[1] and Motion to Stay or Vacate the Conviction and Allow an Appeal to Proceed (the "Motion to Stay").[2] Colding is currently serving a 120-month sentence for a violation of 18 U.S.C. § 922(g): Felon in Possession of a Firearm.[3] In his Motion to Vacate, Colding claims he was given ineffective assistance of counsel during critical stages of his case, in violation of his Sixth Amendment rights.[4] Later, in his Motion to Stay, Colding requested the Court either: (1) stay proceedings on his Motion to Vacate to allow him to attempt to obtain an affidavit from trial counsel to support his ineffective assistance claims; or (2) assume Colding's claim is true and vacate and reenter the Court's

---

[1] Dkt. 146 (Motion to Vacate)

[2] Dkt. 161 (Motion to Stay).

[3] *See* Dkt. 116 (Judgment).

[4] Dkts. 146, 146-1 (Colding Declaration).

1

judgment to allow an appeal to proceed.[5] The Motions are now fully briefed and ripe for resolution.[6] For the following reasons, Colding's Motion to Vacate is **DENIED** and Colding's Motion to Stay is **DENIED**.

## II. BACKGROUND

On May 18, 2017, Colding was indicted for a violation of 18 U.S.C. § 922: Felon in Possession of a Firearm.[7] Attorney Darrel J. Gardner ("trial counsel") had previously been appointed to represent Colding.[8] Initially, Colding pleaded not guilty.[9] On August 3, 2018, Colding changed his plea to guilty pursuant to a written Plea Agreement with the Government.[10] In the Plea Agreement, Colding purported to "waive all rights to appeal the conviction and sentence imposed under this agreement, and will waive all rights to collaterally attack the conviction and sentence, except on the grounds of ineffective assistance of counsel and the voluntariness of the plea."[11] The Court entered its Judgment on August 20, 2018, sentencing Colding to 120 months of incarceration, followed by three years of supervised release.[12]

---

[5] Dkt. 161 at 1.

[6] Dkts. 146, 158 (Response in Opposition), 161, 163 (Response in Opposition), 164 (Reply to Response), 173 (Closing Argument Memorandum in Support of Motion to Vacate, Set Aside or Correct Sentence), 175 (United States' Closing Argument). Defendant also filed a supplemental filing in reply to the United States' closing argument. Dkt. 176. However, no responsive briefing was ordered by the Court and, therefore, Defendant's extraneous filing will not be considered.

[7] Dkt. 22 at 2 (Indictment).

[8] Dkt. 4 (Minute Entry for Initial Appearance).

[9] Dkt. 32 (Minute Entry for Arraignment).

[10] Dkts. 42 (Plea Agreement), 49 (Minute Entry for Change of Plea Hearing).

[11] Dkt. 42 at 2.

[12] Dkt. 116.

On April 10, 2019, Colding, through counsel, filed the Motion to Vacate under 28 U.S.C. § 2255.[13] Colding's Motion to Vacate, supported by a Memorandum in Support of the Motion to Vacate, Set Aside, or Correct Sentence ("Memorandum in Support"),[14] raises two grounds for relief: (1) trial counsel's performance was unconstitutionally deficient for not correcting a misstatement by the Court at the change of plea hearing;[15] and (2) trial counsel rendered ineffective assistance of counsel for not filing a notice of appeal despite the appeal waiver in Colding's Plea Agreement.[16]

The Government opposes the Motion to Vacate.[17] In its opposition, the Government argues that the Court made no misstatements at the plea hearing.[18] The Government further argues that Colding's trial counsel cannot be said to be deficient for failing to file a Notice of Appeal where there is "not a scintilla of evidence petitioner requested an appeal."[19]

On August 3, 2019, Colding filed the Motion to Stay.[20] Colding argued that the intervening Ninth Circuit decision in *United States v. Fabian-Baltazar*,[21] issued on July 30, 2019, required the Court to either assume without deciding that Colding's claim regarding trial counsel's failure to

---

[13] Dkt. 146.

[14] Dkt. 147 (Memorandum in Support).

[15] *Id.* at 6–11.

[16] *Id.* at 11–12.

[17] Dkt. 158.

[18] *Id.* at 10.

[19] *Id.* at 12–14.

[20] Dkt. 161.

[21] 931 F.3d 1216 (9th Cir. 2019).

move forward on an appeal is true and vacate and reenter the judgment so that an appeal may proceed or, alternatively, stay ruling on the Motion to Vacate and allow Colding to gather and put on evidence as to whether he directed trial counsel to file a notice of appeal and whether trial counsel adequately consulted Colding about a potential appeal.[22]

The United States filed a Response in Opposition to Defendant's Motion to Stay or Vacate Conviction and Allow Appeal to Proceed ("Opposition to Stay") on August 5, 2019.[23] The United States argued that Colding has failed to allege that he ever requested his attorney file an appeal, or that his attorney failed to consult with him regarding an appeal.[24] Therefore, the United States argued, an evidentiary hearing under *Fabian-Baltazar* was unnecessary.[25]

On the same day, Colding filed a Reply to Government's Response to Motion to Vacate Conviction and Allow an Appeal to Proceed or Stay Proceeding ("Reply to Opposition to Stay").[26] First, Colding argues that, although he did not allege that he directed his attorney to file a notice of appeal in his Motion to Vacate, *Fabian-Baltazar* still directs courts to inquire into whether Colding was adequately consulted regarding an appeal.[27] Further, on August 11, 2019, Colding requested that the record be expanded to include trial counsel's email response regarding his communications with Colding about an appeal.[28] In the email, trial counsel states:

---

[22] Dkt. 161 at 3.

[23] Dkt. 163 (Opposition to Stay).

[24] *Id.* at 2.

[25] *Id.* at 2–3.

[26] Dkt. 164 (Reply to Opposition to Stay).

[27] *Id.* at 1–2.

[28] Dkt. 165 (Motion to Expand the Record).

4

> As was my practice at the time of Mr. Colding's case, immediately after sentencing I would have told him to call me if he had any questions or concerns about his sentence or appeal rights. I checked my notes from his file, and I do not see any indication that he ever asked me about filing an appeal post sentencing, nor do I recall any such request on his part.[29]

The United States did not oppose Colding's Motion to Expand the Record and stated that it "believes the representation to be correct."[30] The Court granted Colding's Motion to Expand the Record pursuant to Rule 7 on the ground that—although not conclusive under *Fabian-Baltazar*—it was relevant to Colding's § 2255 proceedings.[31]

On October 18, 2019, the Court *sua sponte* set an evidentiary hearing for October 25, 2019.[32] As discussed below, the purpose of the evidentiary hearing was to determine (1) whether Colding requested that trial counsel file a notice of appeal following his sentence and, if not, (2) whether trial counsel adequately consulted Colding on his rights to appeal his case. Colding was the only witness called to testify.[33] Following the close of evidence, the parties were ordered to submit written closing arguments on the available evidence.[34]

### III. LEGAL STANDARD

Under 28 U.S.C. § 2255, a district court may "vacate, set aside, or correct" a sentence of a federal prisoner that was imposed in violation of the Constitution or a law of the United States.[35]

---

[29] Dkt. 165-1 at 1 (Trial Counsel's Email Response).

[30] Dkt. 167 (Response in Non-Opposition).

[31] Dkt. 168 (Order Granting Motion to Expand the Record).

[32] Dkt. 169 (Text Order Setting Hearing).

[33] Dkt. 172 (Witness List).

[34] Dkt. 170 (Minute Entry for Evidentiary Hearing).

[35] 28 U.S.C. § 2255(a)

On a motion for relief under 28 U.S.C. § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[36] If the Court determines that relief is warranted, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[37]

   A. *Ineffective Assistance of Counsel Generally*

A claim of ineffective assistance of counsel is rooted in the Sixth Amendment right to counsel, which is applicable at the plea-bargaining stage of a criminal proceeding and at sentencing.[38] The Sixth Amendment guarantees "the right to counsel of reasonable competence."[39] Generally, a defendant asserting a claim of ineffective assistance of counsel must satisfy the two-element test defined in *Strickland v. Washington*.[40] Under that test, a defendant must show that (1) counsel's performance was deficient, *i.e.*, "fell below 'an objective standard of

---

[36] 28 U.S.C. § 2255(b).

[37] *Id.*

[38] *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). *See also Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("The precedents also establish that there exists a right to counsel during sentencing in both noncapital . . . and capital cases . . . "); *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) ("A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 770–71 (1970)).

[39] *Mannhalt v. Reed*, 847 F.2d 576, 579 (9th Cir. 1988) (citing *McMann,* 397 U.S. at 770–71).

[40] 466 U.S. 668, 687 (1984).

reasonableness;'" [41] and (2) prejudice, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[42]

In assessing the first element, an attorney's performance is strongly presumed to fall within "the wide range of reasonable professional competent assistance."[43] The Supreme Court has cautioned that "it is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"[44] Under the first element, the petitioner "must prove all facts underlying his claims of ineffective assistance by a preponderance of the evidence."[45] The second element, prejudice, "focuses on the question whether counsel's deficient performance renders the result of . . . the proceeding fundamentally unfair."[46] Thus, in determining whether there is a reasonable probability that the results of the proceeding would have been different, courts look to whether that probability is "sufficient to undermine confidence in the outcome."[47]

This standard is applied both in the context of cases that go to trial and in the context of plea agreements. "Because 'an intelligent assessment of the relative advantages of pleading guilty

---

[41] *Silva v. Woodford,* 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Strickland,* 466 U.S. at 688).

[42] *Strickland*, 466 U.S. at 694. *See also United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988).

[43] *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

[44] *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland,* 466 U.S. at 690).

[45] *Alcala v. Woodford*, 334 F.3d 862, 869 (9th Cir. 2003).

[46] *Lockhart*, 506 U.S. at 372.

[47] *Strickland*, 466 U.S. at 694.

7

is frequently impossible without the assistance of an attorney' . . . counsel have a duty to supply criminal defendants with necessary and accurate information."[48] Where a petitioner alleges ineffective assistance of counsel when entering into a plea agreement, "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative causes of action open to the defendant.'"[49] Thus, "[a] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases."[50] In addition, to satisfy the prejudice element of *Strickland* in the context of a guilty plea, a defendant must "show the outcome of the plea process would have been different with competent advice[.]"[51]

*B. Ineffective Assistance of Counsel in Failing to File Post-Conviction Notice of Appeal*

*Roe v. Flores-Ortega*[52] established that constitution requires trial counsel in a criminal case to consult with their client about filing for appeal when there is reason to think either (1) that a rational defendant in their client's position would want to appeal, or (2) that the defendant reasonably demonstrated to counsel that he wished to pursue an appeal.[53] Failure to consult the

---

[48] *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (internal citation omitted) (quoting *Brady v. United States*, 397 U.S. 742, 748 n. 6 (1970)).

[49] *Signori*, 844 F.2d at 638 (quoting *Hill*, 474 U.S. at 56; *North Carolina v. Alford*, 400 U.S. 25 (1970)).

[50] *Id.* (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *McMann*, 397 U.S. at 771).

[51] *Lafler*, 566 U.S. at 163.

[52] 528 U.S. 470 (2000).

[53] *Id.* at 480.

defendant or file an appeal in such a case is presumptively prejudicial.[54] However, until recently, it has been left unclear whether the same presumption of prejudice applies in cases where the defendant signed an appeal waiver[55] as a part of a plea agreement.

On February 27, 2019, the Supreme Court issued its decision in *Garza v. Idaho*.[56] *Garza* concerned a case where a defendant, Gilberto Garza, pleaded guilty under two plea agreements, each containing a clause stating Garza "waived his right to appeal."[57] After Garza had been sentenced, Garza told his trial counsel he wished to appeal.[58] Garza's counsel, however, did not file a notice of appeal.[59] Instead, Garza's counsel told him an appeal would be "problematic because he waived his right to appeal."[60] After Garza's time to appeal had elapsed, Garza raised an ineffective assistance claim.[61]

The *Garza* Court noted that the term "appeal waivers" may "misleadingly suggest a monolithic end to all appellate rights."[62] "In fact, however, no appeal waiver serves as an absolute

---

[54] *Id.* at 483.

[55] "Appeal waivers" are common provisions contained within plea agreements by which a defendant waives certain rights to file an appeal from the conviction and sentence. Plea agreements often contain similar collateral attack waivers whereby the defendant agrees not to otherwise challenge the court's judgment after its entry.

[56] 139 S. Ct. 738 (2019).

[57] *Id.* at 742.

[58] *Id.* at 743.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.* at 744.

9

bar to all appellate claims."[63] Certain claims may fall outside of the scope of an appeal waiver or the government may waive the waiver.[64] Given the possibility that a defendant may end up raising claims beyond an appeal waiver's scope, "simply filing a notice of appeal does not necessarily breach a plea agreement."[65]

The *Garza* Court also clarified what it means to file a notice of appeal.[66] Rather than proceeding with an appeal on the merits, filing a notice of appeal is merely a "ministerial task."[67] For example, "a notice of appeal need only identify who is appealing; what 'judgment, order, or part thereof' is being appealed; and 'the court to which the appeal is taken.'"[68] At this stage, a defendant's particular claims on appeal are often "ill defined or unknown" and choices regarding which arguments to raise on appeal are left to appellate counsel.[69] Although defendants subject to an appeal waiver "ha[ve] fewer possible claims than some other appellants," they do retain the right to file a notice of appeal.[70] Therefore, trial counsel's failure to file a notice of appeal when requested by their client constitutes ineffective assistance of counsel, even where an appeal waiver is present.[71]

---

[63] *Id.*

[64] *Id.*

[65] *Id.* at 746.

[66] *Id.* at 745–746.

[67] *Id.* at 746 (quoting *Flores-Ortega*, 528 U.S. at 477).

[68] *Id.* at 745 (quoting Fed. R. App. P. 3(c)(1)).

[69] *Id.*

[70] *Id.* at 748.

[71] *Id.* at 749–50.

Following *Garza*, the Ninth Circuit published its *per curiam* decision in *Fabian-Baltazar*.[72] The case arose out of a § 2255 motion to vacate filed by Abel Heriberto Fabian-Baltazar.[73] Pursuant to a plea agreement with the United States, Fabian-Baltazar pleaded guilty to possession of 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).[74] Fabian-Baltazar, through his plea agreement, also waived his rights to appeal or collaterally attack his sentence.[75] Nevertheless, Fabian-Baltazar filed the § 2255 motion claiming that his trial counsel rendered ineffective assistance for failing to file a notice of appeal.[76]

The district court denied Fabian-Baltazar's motion on the grounds that the appeal and collateral attack waivers in his plea agreement barred his claim.[77] The Ninth Circuit affirmed the district court's denial of the motion in 2017, noting that Fabian-Baltazar's motion did not challenge the voluntariness of the waiver and, therefore, the waiver was enforceable.[78] On May 21, 2018, Fabian-Baltazar then petitioned the Supreme Court for *certiorari*.[79] Prior to ruling on his petition,

---

[72] 931 F.3d 1216 (9th Cir. 2019).

[73] *Id.* at 1216–1217.

[74] *Id.* at 1216.

[75] *Id.*

[76] *Id.* at 1217.

[77] *Fabian-Baltazar v. United States*, No. 1:13-CR-00032-AWI, 2015 WL 1497537, at *1 (E.D. Cal. Mar. 31, 2015), aff'd, 707 F. App'x 477 (9th Cir. 2017), *cert. granted, judgment vacated*, 139 S. Ct. 1289, 203 L. Ed. 2d 412 (2019), *and vacated and remanded*, 931 F.3d 1216 (9th Cir. 2019)

[78] *Fabian-Baltazar v. United States*, 707 F. App'x 477 (9th Cir. 2017), *cert. granted, judgment vacated*, 139 S. Ct. 1289 (2019), *and vacated and remanded*, 931 F.3d 1216 (9th Cir. 2019).

[79] *Fabian-Baltazar v. United States*, 2018 WL 7506711 (petition for *certiorari*).

11

the Supreme Court decided *Garza*. In light of its decision in *Garza*, the Supreme Court denied Fabian-Baltazar's motion and remanded the case to the Ninth Circuit for further consideration.[80]

Because Fabian-Baltazar's § 2255 motion contended that he expressly instructed his attorney to file a notice of appeal, in light of *Garza*, the Ninth Circuit ordered that the case be remanded to the district court to (1) determine whether such an instruction was given, and if not, (2) determine whether counsel failed to consult, and if so, (3) determine whether that failure constituted deficient performance.[81] If the district court found that Fabian-Baltazar's trial counsel was ineffective, the court could remedy the ineffective assistance by vacating and reentering the judgment to allow an appeal to proceed.[82] Thus, while *Garza* provides the grounds for asserting an ineffective assistance claim in light of an appeal waiver, *Fabian-Baltazar* describes the procedural steps courts should follow in assessing such a claim.

## IV. ANALYSIS

Colding raises two grounds for relief: (1) trial counsel's performance was unconstitutionally deficient for not correcting a statement by the Court at his change of plea hearing;[83] and (2) trial counsel rendered ineffective assistance of counsel for not filing a notice of appeal despite the appeal waiver in Colding's Plea Agreement.[84] The Court addresses each claim in turn.

---

[80] *Fabian-Baltazar v. United States*, 139 S. Ct. 1289 (2019).

[81] *Fabian-Baltazar*, 931 F.3d at 1218.

[82] *Id.* (quoting *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1198 (9th Cir. 2005)).

[83] Dkt. 147 at 6–11 (Memorandum in Support).

[84] *Id.* at 11–12.

12

A. *Whether Trial Counsel Rendered Ineffective Assistance for Failing to Correct Statements by the Court.*

Colding alleges that during his change of plea hearing, the Court inaccurately stated that he had waived his right to appeal and collaterally attack his conviction and sentence pursuant to the Plea Agreement.[85] Specifically, Colding argues that the appeal waiver contained in the Plea Agreement allowed him to appeal or otherwise attack his sentence based on ineffective assistance of counsel or voluntariness of his plea and the Court's statement failed to take these two exceptions into account.[86] Colding further argues that trial counsel should have objected to or otherwise corrected the Court's statement.[87] However, Colding's claim fails to consider the context in which the statement was made. The relevant portion of the Court's colloquy with Colding reads as follows:

> THE COURT: All right. Let's see. Okay. Getting back to page two, bottom of that first paragraph A, so in addition to you're agreeing to plead guilty to Count 1, you are also agreeing to waive any right to appeal your conviction and sentencing imposed under your agreement, as well as any right to collaterally attack your conviction and sentence, except upon the grounds of ineffective assistance of counsel or whether or not your plea was voluntary. Do you understand that?
>
> COLDING: Yes.
>
> THE COURT: What that means—well, it's important for you to understand that you're giving up very valuable rights by waiving your right to appeal and collaterally attack your conviction and sentence. Do you understand that?
>
> COLDING: Yes.[88]

---

[85] *Id.* at 9–11.

[86] *Id.*

[87] *Id.* at 11.

[88] Dkt. 143 at 19 (Transcript of Change of Plea Hearing).

13

Here, the Court first advised Colding as to the contents of the appeal waiver in his Plea Agreement.[89] The Court informed Colding that he was waiving his right to appeal or collaterally attack his sentence subject to two exceptions: ineffective assistance and voluntariness of the plea.[90] Colding explicitly stated that he understood the scope of his appeal waiver.[91] Colding concedes that the Court's first statement correctly stated the contents of the agreement.[92]

Immediately following this comprehensive description of the appeal waiver provisions, the Court then went on to make sure that Colding appreciated the seriousness of waiving certain rights to challenge his conviction and sentence.[93] As part of the subsequent advisement the Court did not repeat the nuances the waiver—*i.e.* the exceptions for ineffective assistance claims or challenges to the voluntariness of the plea.[94] Taken alone, the second advisement given by the Court could be construed as an overstatement of the appeal waiver's scope. However, when read alongside the more exhaustive explanation of the appeal waiver, it is clear that Colding was correctly informed of the waiver's scope and understood it. Thus, the Court's statements, read in context, do not amount to misstatements and Colding's trial counsel was right to refrain from objecting to the Court's correct characterizations of the agreement. Therefore, trial counsel's performance did not "f[a]ll below 'an objective standard of reasonableness,'" nor did Colding suffer any prejudice.[95]

---

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] Dkt. 147 at 9.

[93] Dkt. 143 at 19.

[94] *Id.*

[95] *See Silva*, 279 F.3d at 836 (quoting *Strickland,* 466 U.S. at 688).

Accordingly, Colding has failed to show that his Sixth Amendment right to counsel was violated by trial counsel's choice not to object to the Court's statements during his change of plea hearing.

B. *Whether Trial Counsel Failed to Adequately Consult Colding on Filing an Appeal Waiver*

Colding's trial counsel did not file a notice of appeal following Colding's conviction and sentence. In his Motion to Vacate, Colding asserts that his trial counsel failed to adequately consult him on whether or not he wished to file an appeal waiver.[96] This, Colding argues, amounts to ineffective assistance of counsel in violation of the Sixth Amendment.[97] However, as the Ninth Circuit prescribed in *Fabian-Baltazar*, where a notice of appeal was not filed, the Court must determine (1) whether Colding instructed trial counsel to file a notice of appeal, and if not, (2) whether trial counsel failed to consult, and if so, (3) whether that failure constituted deficient performance.[98]

Here, the Parties have provided the Court has only two pieces of evidence from which to make its findings: Colding's sworn testimony during the evidentiary hearing[99] and the unsworn email from Colding's trial counsel.[100] Initially, Colding testified that trial counsel "never consulted with [him] during the plea process about the appellate waiver."[101] However, upon further

---

[96] Dkt. 147 at 11–13.

[97] *Id.*

[98] *Fabian-Baltazar*, 931 F.3d at 1218.

[99] Dkt. 174 (Transcript of Evidentiary Hearing).

[100] Dkt. 165-1.

[101] Dkt. 174 at 13.

15

questioning Colding stated that he could not remember whether or not trial counsel had consulted with him immediately after sentencing.[102] Specifically, Colding testified as follows:

> THE COURT: Did he say anything to you? So what I'm interested in is whether there was any conversation at all either by you or by him, right, you know, after the sentencing.
>
> THE WITNESS: I can't remember that.
>
> THE COURT: Can't remember any?
>
> THE DEFENDANT: I don't remember him saying anything. No, I didn't say nothing.
>
> THE COURT: You don't remember if you said anything and you can't remember if he said anything?
>
> THE WITNESS: I know I didn't say anything.
>
> THE COURT: You know you didn't say anything to him?
>
> THE WITNESS: I didn't say anything. I was so mad, my feelings about it, that I couldn't say nothing.
>
> THE COURT: I understand. Did he say anything to you?
>
> THE WITNESS: That's just the part I don't remember as well. I don't—I don't remember. I probably wasn't listening for him or he could have said something to me, but it could have been "bye" or something. I don't remember.
>
> THE COURT: You just don't remember if he said anything?
>
> THE WITNESS: Yeah.[103]

During habeas proceedings, the petitioner has the burden of proving the facts underlying their ineffective assistance claim by a preponderance of evidence.[104] "Conclusory allegations

---

[102] *Id.* at 20–21.

[103] *Id.*

[104] *Alcala*, 334 F.3d at 869.

16

which are not supported by a statement of specific facts do not warrant habeas relief."[105] Under the *Fabian-Baltazar* inquiry, Colding must prove that (1) he requested trial counsel to file a notice of appeal, and trial counsel failed to do so; or, (2) that trial counsel failed to consult him about filing a notice of appeal; and (3) that trial counsel's failure to consult constituted constitutionally deficient performance. Here, it is undisputed that Colding did not request his trial counsel file a notice of appeal. Therefore, the Court cannot say that trial counsel's failure to file a notice of appeal was *per se* ineffective assistance of counsel.

Furthermore, Colding—the only witness who testified—could not remember whether or not his trial counsel spoke to him, let alone consulted him about filing a notice of appeal.[106] Colding's testimony, therefore, does not prove that trial counsel did not consult him after sentencing, it only proves that if such consultation occurred Colding cannot remember it. Colding heavily relies on the email from trial counsel, which states that according to trial counsel's practice, "immediately after sentencing [trial counsel] would have told [Colding] to call [trial counsel] if he had any questions or concerns about his sentence or appeal rights."[107] Colding argues that this proves that trial counsel improperly placed the onus on Colding to seek consultation and, as a result, no meaningful consultation occurred.[108]

Despite Colding's interpretation, the email does not describe the conversation that actually took place between Colding and his attorney. The email, which was purportedly authored one year

---

[105] *Beard v. Clarke*, 18 F. App'x 530, 531 (9th Cir. 2001) (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir.1994)).

[106] Dkt. 174 at 20–21.

[107] Dkt. 165-1 at 1.

[108] Dkt. 173 at 2–3.

after sentencing, states that it was trial counsel's practice to inform his clients that they could call him with questions about their sentence and appeal rights.[109] Contrary to Colding's assertions, the email does not belie the possibility that trial counsel made additional remarks or consultations immediately after sentencing. Therefore, Colding's testimony and trial counsel's email does not tend to show—let alone prove by a preponderance—that Colding's trial counsel failed to consult or that such a failure constituted constitutionally deficient performance.[110]

Accordingly, Colding has failed to show that he is entitled to relief on the grounds discussed in *Garza* and *Fabian-Baltazar*.

### C. Whether the Court Should Assume the Truth of Colding's Claim or Otherwise Stay Ruling on His Motion to Vacate

Turning to Colding's Motion to Stay, Colding requested that the Court either (1) assume without deciding that Colding's claim regarding trial counsel's failure to move forward on an appeal is true and vacate and reenter the conviction so that an appeal may proceed or (2) stay ruling on the Motion to Vacate and allow Colding to gather and put on evidence as to whether he directed trial counsel to file a notice of appeal and whether trial counsel adequately consulted Colding about a potential appeal. However, the Court in disposing of his Motion to Vacate has already given Colding ample time to gather and put on evidence in support of his claims. Yet, Colding did not provide sufficient evidence to bear his burden of proof. Therefore, Colding's request that the Court assume the truth of his claims and vacate and reenter its judgment is **DENIED** and his request for a stay is **DENIED**.

---

[109] Dkt. 165-1 at 1.

[110] *See Silva*, 279 F.3d at 836 (quoting *Strickland,* 466 U.S. at 688).

18

## V. CONCLUSION

For the foregoing reasons, Colding's Motion to Vacate at docket 146 is **DENIED** and Colding's Motion to Stay at docket 161 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 17th day of December, 2019

*/s/ Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE